UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIDGET  JACKSON,  an
individual,

      Plaintiff,

v.                    Case No: 2:22-cv-408-JES-NPM

CITY OF CAPE CORAL,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on the City of Cape Coral's (the Defendant or the City) Motion for Summary Judgment (Doc. #28) filed on October 11, 2023. Bridget Jackson (the Plaintiff or Jackson) filed Responses in Opposition (Docs. ##29-30) on November 1, 2023, to which the Defendant filed a Reply (Doc. #31). For the reasons set forth below, the motion is granted.

**I.**

This is an employment discrimination case. Jackson is a woman who alleges that her employer, the City, violated the Equal Pay Act of 1964 (EPA), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2 et seq., by paying her male counterpart a greater salary for substantially equal work in substantially similar positions and

under similar working conditions. (Doc. #18.) The City denies the allegations. (Doc. #19.) The undisputed material facts (hereinafter the "summary judgment facts") are as follows:

The City hired Jackson on October 15, 2001. In 2017, Jackson was promoted to City Ordinance Inspector (COI) and began to earn at a 13 pay grade. Well inspections were a listed duty and responsibility of COIs, and the City's previous COI, Wilber Fischer (Fischer), had conducted all well inspections for the City until his 2017 retirement. "As soon as [Jackson] was hired into the [COI] position" she informed the City she was uncomfortable conducting well inspections. Jackson Dep. 51:6-7. The inspection of wells therefore fell exclusively on David Miller (Miller), a Well Field Maintenance Mechanic for another department within the City. Miller earned at a 15 pay grade.

In May 2018, the City created a new position titled 'Construction Inspector' (CI) within the department and placed Miller in that position. Since CI's were compensated at a 15 pay grade, Miller's salary remained unchanged. Miller continued to inspect all the wells. In October 2018, Miller was promoted to Senior Construction Inspector (SCI) at pay grade 19, and he continued to inspect the wells.

In the spring of 2019, Jackson and another COI contacted the City's human resources department, expressing their belief that they should be classified as CI's instead of COI's. The

City engaged an outside consulting firm to conduct a compensation and position review. The consulting firm recommended COI's be compensated at a 14 pay grade instead of 13, and the City accepted the recommendation.

In January 2020, the City simplified the inspection method for wells. Shortly thereafter Jackson began to inspect wells; she was promoted to CI, and her pay grade increased from 14 to 15.

Jackson again questioned her job duties and rate of pay, and the City performed a desk audit and again engaged the outside consulting firm. The desk audit concluded that Jackson, Miller, and another CI were "doing the same job." (Doc. #29, Ex. 9, p. 5.)[1] The consulting firm recommended that COIs be compensated at a 15 pay grade and that the SCIs (Miller) and the CIs (including Jackson) be reclassified as COIs.

The City accepted and implemented the recommendations on May 1, 2021. Jackson was reclassified from a CI to COI, but her salary remained unchanged since both positions were at a 15 pay grade. Similarly, Miller was reclassified from SCI to COI, and his salary pay grade 19 remained unchanged—but for a different

---

[1] Jackson labeled this exhibit as "Exhibit 8." However, the exhibit appears on the Court's CM/ECF system as Exhibit 9. The Court will cite each exhibit herein by the numerical number assigned to it by the Court's CM/ECF system.

reason. Despite COI's being compensated at a 15 pay grade, Miller kept his pay grade at 19 pursuant to The City's Code of Ordinance, which provides:

> (c) An employee's rate of pay after reclassification shall not be less than the minimum nor more than the maximum of his or her new pay grade. However, in the event a reclassified employee's rate of pay in his or her former pay grade was greater than the maximum of his or her new pay grade, the employee's rate of pay shall remain the same as in the former pay grade. The rate of pay for those employees shall remain fixed at that pay rate until pay range adjustments cause the established pay range maximum to exceed the employee's rate of pay.

Cline Decl. ¶ 15 (quoting Cape Coral, Fla., Code § 2-37.8(c)(hereinafter "the Ordinance")). Jackson remains employed by the City as a COI at pay grade 15.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

The City asserts that "[t]here exists no genuine issue as to any material fact" and that it is entitled to summary judgment in its favor. (Doc. #28, p. 2.) Jackson sees it differently.

III.

The Court will address three procedural disputes between the parties before addressing their substantive arguments.

First, the City requests that either or both of Jackson's Responses to the summary judgment motion be stricken for violating this Court's Local Rules and the Case Management Order. (Doc. #31, pp. 1-2.) Jackson filed two separate Responses totaling 35 pages. (See Docs. ##29-30.) The first is Jackson's memorandum of law in opposition to the Motion (Doc. #29), and the second is Jackson's response to the City's statement of facts "designed solely to respond to Defendant's Statement by identifying which of the factual grounds [from] Defendant's motion are disputed." (Doc. #30, pp. 1-2.)

Jackson's Responses run afoul of this Court's Case Management Order, which states that "[a]n opposition to a motion for summary judgment must include a memorandum of law and a specifically captioned section titled, 'Response to Statement of Material Facts' in a single document not to exceed 20 pages in length." (Doc. #17, p. 5)(emphasis added.)  Jackson's Responses also violate this Court's Local Rules since the Responses are "longer than twenty pages inclusive of all parts." M.D. Fla. R. 3.01(b).

The City's Reply also violates the Local Rules.  The Reply was nine pages (see Doc. #31) when a "reply must not exceed seven

6

pages inclusive of all parts." M.D. Fla. R. 3.01(d); (see also Doc. #17, p. 5.)

Neither party requested leave to file an oversized brief. See M.D. Fla. R. 3.01. Rather than strike the offending documents or portions thereof, the Court will exercise its discretion and consider the briefs in the interest of judicial efficiency. See Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009)("A district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991))).

Second, Jackson stated in her deposition she had no evidence that her comparator made more money because of his gender. (See Doc. #28, pp. 11-12.) The City argues that this resolves the case, and the Court need not go further. However, summary judgment does not simply test a party's understanding of the record, but requires the court to make its determination after a review of the entire record. That determination has not yet been made in this case, so the Court must reject the City's invitation to stop.

Lastly, Jackson argues summary judgment is improper "because Defendant's Motion fails to address Plaintiff's contention that she was discriminated against by Defendant on the basis of her sex and gender when the City unfairly and

unequally assigned overtime (or overtime pay) to Mr. David Miller." (Doc. #29, p. 3.) The City counters that Jackson never alleged overtime improprieties, and is now attempting to "change, modify, or advance a new theory of claimed discrimination in response to the City's motion for summary judgment." (Doc. #31, p. 4.) Jackson's Amended Complaint (Doc. # 18-1) does not assert any claim relating to overtime assignments or pay, but alleges a salary discrepancy (Doc. #18-1, ¶¶ 4, 20) and "additional benefits, including more retirement pension benefits (which are based on salary)." (Id. at ¶¶27-28.). New matters such as overtime cannot now be asserted to defend against summary judgment.

**V.**

**A. Equal Pay Act**

Count I alleges a violation of the Equal Pay Act, asserting that Jackson's male counterparts were paid more and received additional benefits for doing the same work as plaintiff. (Doc. # 18-1, ¶¶ 23-30.)

"The Equal Pay Act is divided into two parts: a definition of the violation, followed by four affirmative defenses." Washington Cnty. v. Gunther, 452 U.S. 161, 169 (1981). An employer violates the EPA when it discriminates "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays

wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1). The four affirmative defenses concern whether "such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." Id.

Courts analyze EPA claims under a three-step burden-shifting framework. First, the plaintiff bears the burden of establishing a prima facie case. "A plaintiff establishes a prima facie case under the Equal Pay Act if she shows that her employer paid 'different wages to employees of opposite sexes for equal work on jobs requiring equal skill, effort, and responsibility, and which [we]re performed under similar working conditions.'" Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018)(alteration in the original)(quoting Irby v. Bittick, 44 F.3d 949, 954 (11th Cir. 1995)). Second, if a prima facie case is shown, the burden shifts to the defendant to justify the differential by establishing at least one of the four affirmative defenses by a preponderance of the evidence. Steger v. Gen. Elec. Co., 318 F.3d 1066, 1078 (11th Cir. 2003). Third, if the defendant succeeds, the burden shifts back to the plaintiff to

show with affirmative evidence that the justifications are pretextual. Schwartz v. Fla. Bd. of Regents, 954 F.2d 620, 623 (11th Cir. 1991). The Court evaluates all evidence proffered by the plaintiff in the light most favorable to her case. Mulhall v. Advance Sec., Inc., 19 F.3d 586, 591 (11th Cir. 1994).

### (1)  Jackson's *prima facie* case

"A plaintiff establishes a *prima facie* case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal" with unequal pay. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989). "The *prima facie* case . . . focuses solely on the primary duties of each job, not duties that are incidental or insubstantial." Miranda, 975 F.2d at 1533. "Although job titles [and job descriptions] are entitled to some weight in this evaluation, 'the controlling factor under the Equal Pay Act is job content'—the actual duties that the respective employees are called upon to perform." Id. (quoting Hodgson v. Behrens Drug Co., 475 F.2d 1041, 1049 (5th Cir. 1973)). "[T]he skills and qualifications actually needed to perform the jobs are considered," but not "the skills and qualifications of the individual employees holding those jobs." Id. Experience is

relevant as a defense, but irrelevant to the prima facie inquiry. Id. at n.18; Mulhall, 19 F.3d at 592. Establishing a *prima facie* case against just one employee of the opposite sex suffices. Mitchell v. Jefferson Cnty. Bd. of Educ., 936 F.2d 539, 547 (11th Cir. 1991).

Jackson succeeds in establishing a *prima facie* case of gender discrimination under the EPA for some, but not all, of the time-period she alleges. The proffered comparator is Miller.[2] Jackson argues that "there is sufficient evidence available in the record for a reasonable juror to conclude Plaintiff and Mr. Miller occupy a similar job." (Doc. #29, p. 11-12.) But this is only true for some of the time-period, since Jackson's and Miller's actual job content differed for some time. (See Doc. #29, p. 6)("It just so happens that Plaintiff used her skill set to do mostly land use inspections and Mr. Miller used his skill set to do well inspections, as directed and assigned by the City."). Jackson focuses on the job descriptions to assert the jobs were substantially equal, but this is an improper focus:

> As to the job descriptions, the Trial Judge was clearly correct to place her reliance elsewhere. The controlling factor under the Equal Pay Act is job content— the actual duties that the respective employees are called upon to perform. Job descriptions

---

[2] See Gosa v. Bryce Hosp., 780 F.2d 917, 918 (11th Cir. 1986)("A male to whom a female plaintiff is compared for purposes of determining whether a wage discrepancy exists for Equal Pay Act purposes is referred to as a 'comparator.'").

> prepared by the employer may or may not fairly describe
> job content.

Hodgson, 436 F.2d at 724 (citing 29 C.F.R. § 800.121 (1970)).[3]

The actual duties significantly differed for much of the time.  It was not until the City simplified the well inspection process in January 2020 that Jackson began to inspect wells alongside Miller. (Doc. #30, p. 4)("[I]t is not disputed that well inspections were exclusively performed by Mr. David Miller from the time the City chose to move him to the Building Division until the City choose [sic] to change the well inspection procedure . . . ."); (Id., p. 6)("[I]t is undisputed that The City did begin to modify the inspection method for wells to make it a less time consuming [sic] around January 2020 . . . ."). Thus, Jackson and Miller did not have substantially equal jobs until January 2020 when they began to perform jobs with the same actual job content. Miller is an inappropriate comparator for EPA purposes before that date, and no proper comparator is identified for the pre-January 2020 time period.

Miller's email, the desk audit, and the consulting firm's letter substantiate this finding since all three came **after**

---

[3] "Decisions of the former Fifth Circuit issued before October 1, 1981 constitute binding precedent in the Eleventh Circuit." United States v. Bird, 79 F.4th 1344, 1353 n.4 (11th Cir. 2023)(citing Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc)).

January 2020. Thus, the desk audit concluded they were "doing the same job" (Doc. #29, Ex. 9, p. 5) and the consulting firm found the jobs had "the same essential duties" and recommended they "be reclassified as [COI's] in grade 15." (Doc. #29, Ex. 8, p. 1.) Additionally, the desk audit states that an Erosion Control certification was required for the CI and SCI roles. (Doc. #29, Ex. 9, p. 1.) Jackson testified in deposition that she obtained that certification in 2019, Jackson Dep. 11:13, in hopes of "obtain[ing] a higher paid position," namely the SCI role. Id. at 14:4-9. Since Miller's SCI job required greater qualifications than Jackson's COI job, which she occupied in all of 2019, it follows they were not substantially equal jobs. See Miranda, 975 F.2d at 1533.

Jackson's reliance on Miller's email is misplaced for two reasons. First, Jackson offers the email to show that "Mr. Miller stated in an email to the City that he and Ms. Jackson 'do virtually the same job.'" (Doc. #29, p. 7)(quoting (Doc. #29, Ex. 10.)) But Jackson takes the quoted language out of context. The full email reads as follows:

> Lisa, I believe I understand what this is really all about. Someone believes they should be a senior construction inspector because they do virtually the same job. I personally agree, if they have the qualifications they should have the chance to become a senior as well. Look forward to having your company tomorrow!

(Doc. #29, Ex. 10.) A reading of the full sentence does not state that Miller believes "someone" does the same job.

Second, even if Miller's email had been before January 2020, and could be interpreted as Jackson asserts, Miller is the comparator, not the alleged decisionmaker. See Steger, 318 F.3d at 1079 (finding the district court correctly precluded statements from non-decisionmakers as irrelevant and unfairly prejudicial since 'statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process' at issue will not satisfy the employee's burden." (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

For these reasons, Jackson has established a prima facia case of discrimination under the EPA, but only from January 2020 onward.

### (2) **Affirmative Defenses**

Since plaintiff establishes a prima facie case under the EPA, she simultaneously "establishes a form of 'strict liability'" that may only be rebutted by one of the affirmative defenses under the Act. Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)(quoting Miranda, 975 F.2d at 1533). To do so, the employer bears a heavy burden of persuasion that can only be satisfied if it proves by a preponderance of the evidence that "the factor of sex provided no basis for the wage

differential." Steger, 318 F.3d at 1078(quoting Irby, 44 F.3d at 954).  The City offers two main defenses: that Miller's salary was forcibly red circled[4] due to the Ordinance, and that Miller had superior well inspection experience. (Doc. #28, p. 17.) Jackson seemingly concedes these explanations suffice and that the burden returns to her. (Doc. #29, p. 8)("The Defendant has proffered reasons that the pay discrepancy is based on affirmative defenses under the EPA, so the burden shifts back to the Plaintiff . . . .") The Court agrees that the City has met its burden and the burden of proof returns to Jackson.

The "based on any other factor other than sex" affirmative defense is a "broad" and "catch-all exception" under the EPA. Corning Glass Works v. Brennan, 417 U.S. 188, 198, 204 (1974). Under it, courts "may consider factors such as the 'unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business.'" Steger, 318 F.3d at 1078 (alteration in the original)(quoting Irby, 44 F.3d at 955). Congress recognized legitimate red circling as a special exigent circumstance, see Glenn v. Gen. Motors Corp., 841 F.2d 1567, 1571 (11th Cir. 1988), so it is accepted as an affirmative

---

[4] "The term 'red circle' describes 'certain unusual, higher than normal, wage rates which are maintained for many reasons.'" Mulhall, 19 F.3d at 595 (quoting Gosa, 780 F.2d at 918).

defense. Mulhall, 19 F.3d at 596 ("When a claimant identifies a legitimately red circled employee as a comparator, the employer has an affirmative defense.").

It is undisputed that Miller had more than two years of experience inspecting wells by the time Jackson inspected her first well in January 2020. Since Miller possessed superior experience, the City offers a legitimate nondiscriminatory reason and affirmative defense under the EPA. See Irby, 44 F. 3d at 956. It is also undisputed that the Ordinance was in effect when the City reclassified Jackson and Miller to the same position. This red circling is a legitimate nondiscriminatory reason and affirmative defense under the EPA. See Mulhall, 19 F.3d at 596. The City has proven by a preponderance of the evidence that the pay differential from January 2020 onward was based on factors other than sex. The burden therefore returns to Jackson to show pretext.

### (3) **Pretext**

"To rebut an employer's legitimate nondiscriminatory reasons for its adverse action, the employee must produce evidence which directly establishes discrimination or which permits the jury to reasonably disbelieve the employer's proffered reason." Steger, 318 F.3d at 1079 (citing Ross v. Rhodes Furniture, Inc., 146 F.3d 1286, 1290 (11th Cir. 1998)). "Direct evidence of discrimination is evidence that 'reflects a

discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee' and, 'if believed, proves the existence of a fact without inference or presumption.'" Fernandez v. Trees, Inc., 961 F.3d 1148, 1156 (11th Cir. 2020)(quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004)). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." Id. (alteration in the original).[5]

The second method of rebutting an employer's legitimate nondiscriminatory reasons depends on "whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.". Ezell v. Wynn, 802 F.3d 1217, 1227 (11th Cir. 2015)(quoting Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir.2005)). Plaintiff "must meet each proffered reason 'head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom

---

[5]See also Harris v. Monroe Cnty. Pub. Libr. Bd. of Trustees, No. 22-11236, 2023 WL 6866602, at *5 n.11 (11th Cir. Oct. 18, 2023); Kelley v. Howden, No. 21-13573, 2022 WL 17259720, at *4 (11th Cir. Nov. 29, 2022), cert. denied, 143 S. Ct. 2497, 216 L. Ed. 2d 456 (2023)).

of that reason.'" <u>Furcron v. Mail Centers Plus, LLC</u>, 843 F.3d 1295, 1313–14 (11th Cir. 2016)(quoting <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000)). "Further, 'the inquiry into pretext centers on the employer's beliefs, not the employee's beliefs,' and '[a] plaintiff is not allowed to [merely] recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.'" <u>Hornsby-Culpepper v. Ware</u>, 906 F.3d 1302, 1313 (11th Cir. 2018)(alterations in the original)(quoting <u>Alvarez v. Royal Atl. Developers, Inc.</u>, 610 F.3d 1253, 1265–66 (11th Cir. 2010)).

Jackson does not directly rebut any of the City's proffered reasons. Jackson's responsive memorandum does not address the Ordinance or red circling, much less rebut them. (<u>See</u> Doc. #29.) Rather, Jackson curtly states that "the [O]rdinance [is] not material to this case" since it "was written and passed after the City chose not to fully and comprehensively train Ms. Jackson on how to perform well inspections or change the method of well inspections, as it would do in the future." (Doc. #30, p. 11.) The Ordinance was in effect when the triggering event (Miller's reclassification) occurred, and Jackson makes no attempt to explain why it becomes immaterial simply because it did not exist at some earlier point.

Jackson's only other mention of the Ordinance is that the "Ordinance . . . speaks for itself." (<u>Id.</u>, p. 9.) The Court

18

agrees. It's clear and unambiguous terms say that "in the event a reclassified employee's rate of pay in his or her former pay grade was greater than the maximum of his or her new pay grade, the employee's rate of pay shall remain the same as in the former pay grade." Cline Decl. ¶ 15 (quoting Cape Coral, Fla., Code § 2-37.8(c)). Jackson produces no evidence or argument that could lead a reasonable jury to disbelieve that it was the Ordinance that caused Miller's greater pay grade to remain the same after his reclassification.

Jackson fairs no better regarding the City's proffered reason of Miller's greater experience inspecting wells. "The defense of experience . . . is capable of being rebutted; for example, the plaintiff could show that he or she had equal or more experience of the same type. . . . to gain experience one must necessarily spend time in an activity." Irby, 44 F.3d at 956. Jackson asserts that "Mr. Miller's promotion was unsupported since he did not have more experience than Plaintiff and did not have greater seniority than Plaintiff." (Doc. #29, p. 8.) Yet it is undisputed that Jackson began inspecting wells in January 2020, while Miller began inspecting wells in 2017. (See Doc. #30, p. 4). Jackson's conclusory statement is insufficient to rebut the City's well inspection experience justification. Thus, Jackson exposes no weakness, implausibility, inconsistency,

incoherency, or contradiction in the City's well inspection experience justification.

Jackson also attempts to show pretext by stating that gender discrimination is evident because: (1) the City did not sufficiently train her; (2) Miller was unqualified for his promotion; (3) "the City changed the well inspection procedure for Mr. Miller[] but not for [her];" and (4) Miller received "preferential treatment" as evident from him having "his own office separate from" female coworkers along with "more frequent overtime assignments," excusals from meetings, and his refusal to partake in certain trainings. (Doc. #29, pp. 8-10.)

Jackson's statements, by themselves, fail to establish that the City's identified reasons were pretextual. "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of legitimate, non-discriminatory reasons for its actions." Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989)(alterations in the original)(quoting Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988)). Even if true, ineffective training, accensions, inspection procedures, office placement, and Jackson's other allegations do not undermine the effect of either the Ordinance or Miller's experience. At most, they might call into question the judgment of the employer, but

antidiscrimination employment statutes were "not designed to make federal courts 'sit as a super-personnel department that reexamines an entity's business decisions.'" Denney v. City of Albany, 247 F.3d 1172, 1188 (11th Cir. 2001)(quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991)). "We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." Rojas v. Fla., 285 F.3d 1339, 1342 (11th Cir. 2002)(quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir.1999). In other words, "[w]e do not ask whether the employer selected the 'most' qualified candidate, but only whether it selected the candidate based on an unlawful motive." Denney, 247 F.3d at 1188. To answer that question, "our inquiry is limited to whether the employer gave an honest explanation of its behavior." Chapman, 229 F.3d at 1030 (11th Cir. 2000)(quoting Elrod, 939 F.2d at 1470 (11th Cir.1991)). Jackson failed to carry her burden when she offered conclusory allegations in lieu of any evidence that could "permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)(quoting Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994)).

Jackson asserts that at the very least, these allegations create "a genuine issue of material fact, which precludes granting Defendant's Motion for Summary Judgment." (Id. at p. 8.) That is not so either:

> [I]n considering whether a plaintiff has presented a jury question on pretext, we have required that the plaintiff point to facts which, if true, would present a basis for the disbelief of the defendant's overall justification. . . . The plaintiff must call into question the veracity of the defendant's ultimate justification itself.

Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996). The summary judgment facts are undisputed, and Jackson cannot avoid summary judgment with unsubstantiated allegations. "Federal Rule of Civil Procedure 56 requires that a party defending against a motion for summary judgment respond with affidavits, depositions, or other evidence to demonstrate that there are material facts that must be presented to a jury for resolution." Miranda, 975 F.2d at 1533.  "'[B]ecause the plaintiff bears the burden of establishing pretext, [s]he must present significantly probative evidence on the issue to avoid summary judgment.'" Id. Put differently, "a plaintiff is entitled to survive summary judgment, and judgment as a matter of law, if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." Combs, 106 F.3d at 1529. Jackson fails to carry her burden since

she has proffered only unrelated and unsubstantiated conclusory allegations instead of affirmative evidence directly challenging the veracity of the City's stated justifications.

Jackson has established a prima facie case for only a portion of the time-period; the City has shown justifications for the pay differential for the relevant time period; and these justifications have not been shown to be pretextual.  The City is entitled to summary judgment as to the EPA count.

### B. Title VII Claim

Jackson asserts in Count II of the Amended Complaint that the pay differential also violated Title VII.  "Title VII and the Equal Pay Act exist side by side in the effort to rid the workforce of gender-based discrimination." Miranda, 975 F.2d at 1527.

"Title VII, in pertinent part, makes it unlawful for an employer to 'discriminate against any individual with respect to h[er] compensation . . . because of such individual's . . . sex.'"

Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1185 (11th Cir. 2005), aff'd, 550 U.S. 618 (2007), superseded by statute on other grounds, Lilly Ledbetter Fair Pay Act of 2009, Pub.L. 111-2, as stated in Davis v. Bombardier Transp. Holdings (USA) Inc., 794 F.3d 266, 269-70 (2d Cir. 2015)(quoting 42 U.S.C. § 2000e-2(a)(1)). To succeed in a Title VII claim, an employee

"must show 'through either direct evidence or circumstantial evidence' that her employer acted with discriminatory intent." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 921 (11th Cir. 2018)(quoting Wilson, 376 F.3d at 1085). The same definition of direct evidence as discussed within the EPA applies. See supra Section III.A.3.

"If the plaintiff presents direct evidence that the employer acted with discriminatory motive and the trier of fact believes it, then the employer can avoid liability only if he or she satisfies the trier of fact by a preponderance of the evidence that the same employment decision would have been reached in the absence of the discriminatory motive." Burns v. Gadsden State Cmty. Coll., 908 F.2d 1512, 1518 (11th Cir. 1990) "In contrast, circumstantial evidence only 'suggests, but does not prove, a discriminatory motive,' and may be evaluated under the burden-shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Jefferson, 891 F.3d at 921-22 (quoting Wilson, 376 F.3d at 1086). Jackson advances her argument exclusively on circumstantial evidence, (see Doc. #29, p.16), so the McDonnell Douglas framework applies.

"Under this framework, the plaintiff initially must establish a prima facie case of discrimination." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). "The burden then shifts to the employer to rebut this presumption

24

by producing evidence that its action was taken for some legitimate, non-discriminatory reason." Id. "If it meets that burden, the presumption of intentional discrimination drops out of the case and [the plaintiff] must demonstrate that [the employer]'s 'proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that [he] has been the victim of intentional discrimination.'" Ossmann v. Meredith Corp., 82 F.4th 1007, 1014 (11th Cir. 2023)(cleaned up)(quoting Lewis v. City of Union City, 918 F.3d 1213, 1220-21 (11th Cir. 2019)).

While they share some overlap, "there is a significant difference between Title VII and the EPA as to both elements and burdens of proof." Meeks, 15 F.3d at 1019. One such difference is that "[a] plaintiff suing under the Equal Pay Act must meet the fairly strict standard of proving that she performed substantially similar work for less pay," but "there is a relaxed standard of similarity between male and female-occupied jobs" under Title VII. Miranda, 975 F.2d at 1526. Additionally, if successful in "establishing a *prima facie* case, the plaintiff in a Title VII action creates [only] a rebuttable 'presumption that the employer unlawfully discriminated against' him"— not a form of strict liability like the EPA. U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)(quoting Texas

Department of Community Affairs v. Burdine*,* 450 U.S. 248, 254 (1981)). "Under Title VII, the risk of nonpersuasion always remains with the plaintiff," Meeks, 15 F.3d at 1019, unlike the EPA where the burden of persuasion falls on the defendant to establish a justification. Mulhall, 19 F.3d at 592 n.12. "Once that justification is offered [under Title VII], the presumption of discrimination falls away and the plaintiff tries to show not only that the employer's justification was pretextual, but that the real reason for the employment action was discrimination." Tynes v. Fla. Dep't of Juv. Just., 88 F.4th 939, 944 (11th Cir. 2023); see also Mulhall, 19 F.3d at 597 (stating that one of the ways "Title VII differs from the EPA" is that "plaintiff must prove discriminatory intent" under Title VII).

**(1)  Jackson's *prima facie* case**

"The plaintiff establishes a *prima facie* case of sex discrimination under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males." Miranda, 975 F.2d at 1529. Specifically, "plaintiff must show that she and her comparators are 'similarly situated in all material respects.'" Lewis, 918 F.3d at 1224. This does not require plaintiff to prove "that she and her comparators are identical save for their" gender, or that they have "precisely the same title. Nor will minor differences in job function disqualify a would-be comparator." Id. at 1227

(internal citation omitted). But a plaintiff cannot establish a Title VII prima facie case against comparator "employees who are differently situated in 'material respects'—*e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." Id. Plaintiff must prove her prima facie case by a preponderance of the evidence. Miranda, 975 F. 2d at 1528.

Jackson has already made a *prima facie* case under the EPA from January 2020 onward, and the Court finds the same evidence establishes a *prima facie* case under Title VII for those same dates. Mulhall, 19 F.3d at 598 ("Clearly, if plaintiff makes a *prima facie* case under the EPA, she simultaneously establishes facts necessary to go forward on a Title VII claim." (citing EEOC v. White & Sons Enterps.*,* 881 F.2d 1006, 1008, 1010 (11th Cir. 1989)). The question is whether Jackson has made a *prima facie* case under Title VII's less stringent standard for the time-period excluded from her EPA *prima facie* claim. The Court finds she has not.

Even under Title VII's less stringent standard, Jackson still has not made a *prima facie* case other than from January 2020 onward. While "disparate pay is an adverse employment action under Title VII," Bowen, 882 F.3d at 1364, "[t]reating *different* cases differently is not discriminatory, let alone intentionally so." Lewis, 918 F.3d at 1222–23. It is undisputed

27

that when Miller began inspecting wells in 2017, that was solely his responsibility, and no other person inspected wells for the City. It is also undisputed that it was not until January 2020 that Jackson began to inspect wells alongside Miller. Given that Jackson and her comparator had no overlap in job functions before January 2020, it cannot be said they shared only "minor differences in job function." Lewis, 918 F.3d at 1227. Rather, they were "differently situated in 'material respects'—*e.g.*, who engaged in different conduct . . . ." Id. Jackson has a Title VII prima facie case from January 2020 onward but not before.

**(2)  Employer Justifications**

"[E]stablishing a prima facie case of discrimination entitles the plaintiff to judgment—to victory—if the employer either can't, won't, or doesn't provide a nondiscriminatory explanation for its actions." Id. at 1222. "Defendant's burden of production in rebutting the *prima facie* case is 'exceedingly light.'" Miranda, 975 F.2d at 1529 (quoting Perryman v. Johnson Products, Inc., 698 F.2d 1138, 1142 (11th Cir.1983)). "[D]efendant must merely proffer non-gender based reasons, not prove them." Meeks, 15 F.3d at 1019 (citing Miranda, 975 F.2d at 1529). "[A]ll that matters is that the employer advance an explanation for its action that is not discriminatory in nature." Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999).

The City offers the same justifications: The Ordinance and Miller's superior well inspection experience. (See Doc. #28, p. 20.) See Miranda, 975 F. 2d at 1528 (stating that Title VII adopted the affirmative defenses of the EPA)(citing Gunther, 452 U.S. 161); see also Williamson v. Alabama Dep't of Mental Health & Mental Retardation, No. 21-13274, 2023 WL 5287873, at *8 (11th Cir. Aug. 17, 2023)(per curiam)(stating that "superior . . . experience . . . is a legitimate, non-discriminatory reason" under Title VII). Jackson concedes the City has met its burden (Doc. #29, p. 12), and the Court agrees.  The burden returns to Jackson.

**(3)  Pretext**

"A plaintiff may overcome the employer's asserted legitimate reasons and avoid judgment as a matter of law 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence.*" Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir. 1999)(quoting Combs*, 106 F.3d at 1528). The inquiry follows that utilized by the EPA, again turning on "whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs, 106 F.3d at

1538(quoting *Sheridan v. E.I. DuPont De Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir. 1996). But a plaintiff's Title VII burden to demonstrate pretext mixes with her need to demonstrate intentional discrimination. *Ossmann*, 82 F.4th at 1014.

"[O]nce the plaintiff introduces evidence sufficient to permit the factfinder to disbelieve the employer's proffered explanations, summary judgment is not appropriate, because '[i]ssues of fact and sufficiency of evidence are properly reserved for the jury.'" *Combs*, 106 F.3d at 1530 (quoting *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913 (11th Cir.1993)). But "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024–25.

Jackson offers the same arguments for Title VII pretext as she did for EPA pretext. (*See* Doc. #29, pp. 12-13.) For the same reasons, those arguments are insufficient under Title VII. *See supra* Section III.A.3. They do not create a genuine issue of material fact that could establish that the City's justifications are pretextual and much less that intentional discrimination occurred. The City is entitled to summary judgment as to Jackson's Title VII claim.

Accordingly, it is now

**ORDERED:**

1.   Defendant's Motion for Summary Judgment (Doc. #28) is **GRANTED** and judgment will be entered on both counts of the Amended Complaint in favor of The City of Cape Coral and against Bridget Jackson.

2.   The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this _____1st_____ day of February, 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record